UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE WATSON-EL (#21461-424), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 7036 |
| | ) | |
| ERIC WILSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

The plaintiff, a federal prisoner, has brought this *pro se* civil rights action against federal prison officials pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The plaintiff additionally purports a cause of action against the United States under the Federal Tort Claims Act (hereinafter, "the FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The plaintiff alleges that correctional officials and health care providers at the Metropolitan Correctional Center violated the plaintiff's constitutional rights by denying him due process, by infringing on the exercise of his freedom of association and religious beliefs, and by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that the defendants wrongfully froze the funds in his prison trust account; he further contends that as a result, he was denied telephone privileges, religious items, and prescribed medications because he was unable to pay for them.

This matter is before the court for ruling on the parties' cross-motions for summary judgment. For the reasons stated in this order, the defendants' motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. Certain of the plaintiff's

claims must be dismissed for failure to exhaust appropriate administrative remedies before initiating suit; with respect to all other claims, the plaintiff has no triable cause of action with regard to the $75.00 encumbrance on his prison trust account, notwithstanding his attempts to "constitutionalize" his claims.

<u>STANDARD OF REVIEW</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006).  In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).  The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter.  The only question is whether there is a genuine issue of fact."  *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations

omitted).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

<u>FACTS AND BACKGROUND</u>

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.).  Together with their motion for summary judgment, the defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 58], as required by circuit precedent.  That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted.  *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).  The notice specifically provides:

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
>> (3) a concise response to the movant's statement that shall contain
>>
>> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>>
>> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1.  *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School*

*Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co.,*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite these admonitions, the plaintiff's response to the defendants' statement of uncontested facts merely argues or clarifies certain points; the plaintiff does not cite any authority for most of the factual propositions he makes. Likewise, the plaintiff's cross-motion for summary judgment is unaccompanied by a supporting memorandum of law or required Rule 56.1(a) statement of uncontested facts.

Because the plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. In addition, a layperson may not testify about matters involving medical, technical, or other specialized knowledge. *See* Fed. R. Evid. 701, 702.

Consequently, the following facts are deemed undisputed for purposes of this motion [the court has omitted certain contested factual matters that are not outcome-dispositive]:

The plaintiff is a federal prisoner, currently confined at the U.S. Penitentiary in Oxford, Wisconsin.  (Document No. 80, Notice of Change of Address.)  At the time the plaintiff initiated suit, he was an inmate at the Metropolitan Correctional Center [hereinafter, "MCC"] in Chicago, Illinois.  (Amended Complaint, Document no. 39, at p. 2.)  Defendant Robert Johnson is a Special Intelligence Officer at MCC.  (*Ibid.*)  Defendant Deborah Lamping is the Administrator of Health Services at MCC.  (*Ibid.*)  Defendant Paul Harvey is the facility's clinical director.  (*Id.* at p. 3.)  Harvey and Lamping are both commissioned officers of the U.S. Public Health Service. (Defendants' Exhibit 9, Affidavit of Ben Brown, at ¶ 3.)  Defendant Roberto Aruiza is a staff physician at MCC.  (*Ibid.*)  Defendant Eric Wilson is MCC's Warden.  (Amended Complaint, p. 2.)

On January 28, 2007, the plaintiff received a $75.00 deposit into his commissary account from a non-incarcerated person named Diana Snejberg ("Snejberg").  (Defendants' Exhibit 1, Inmate Statement; Defendants' Exhibit 2, Memorandum Re: Request for Encumbrance of Inmate Funds.)

Several months later, in reviewing inmate financial transactions, defendant Johnson noticed that Snejberg's telephone number appeared on the call list of another inmate, Dennis Harmon.  (Exhibit 2.)  Johnson therefore requested that a hold be placed on the $75.00 pending an investigation.  (*Ibid.*)  Warden Wilson approved the encumbrance on the plaintiff's commissary account on August 22, 2007.  (*Ibid.*)

On April 6, 2008, the plaintiff made an informal request to his counselor to have the encumbrance lifted.  (Defendants' Exhibit 3, Informal Resolution Form.)  The plaintiff's counselor responded that the issue could not be resolved at that level.  (*Ibid.*)

The plaintiff then filed a formal request for administrative remedy. (Defendants' Exhibit 4.) The plaintiff once again asked that the $75.00 encumbrance be lifted, declaring that he needed money to purchase medication for acid reflux. (*Ibid.*)

On April 10, 2008, Warden Wilson denied the plaintiff's request for administrative remedy. (*Ibid.*) Wilson explained that (1) the money had come from the common law wife of another inmate, and (2) Bureau of Prisons ("BOP") regulations prohibited transfers between inmates unless (a) the inmates involved were close relatives and (b) the transfer was approved by the warden. (*Ibid.*)

The BOP offers several rationales behind the provision prohibiting unrelated inmates from channeling money to each other. (Defendants' Exhibit 10, Affidavit of Antonio Salas, MCC Captain, ¶ 3.) The purpose of the regulation is to prevent illegal activity among inmates and to ensure the safety and security of the inmates and the institution. (*Ibid.*) Inmates are not allowed to receive funds from another inmate or another inmate's family members because the money could be exchanged for contraband or "favors." (*Ibid.*) In addition, inmates can extort money from fellow prisoners for providing protection or because they have some other advantage that gives them leverage against another inmate. (*Ibid.*) In Salas' experience, such transfers between unrelated inmates tend to indicate illegal activity. (*Ibid.*)

On April 28, 2008, the plaintiff appealed the Warden's decision to the BOP's regional director. (Defendants' Exhibit 5, Regional Administrative Remedy Appeal.) The plaintiff clarified that there was technically no transfer of funds between two inmates at issue, but rather a deposit from an outsider; moreover, he noted that he had received no incident report, hearing, or

other due process.  The plaintiff asserted that he was unable to call his family and also implied again that he was unable to buy his acid reflux medication.  (*Ibid.*)

In response, the Regional Director reiterated the previously-given reasons for the freeze on the plaintiff's funds.  (*Ibid.*)  The Regional Director further stated that because BOP rules permit encumbrances to be placed at the warden's discretion, no due process was required. (*Ibid.*)  The Regional Director accordingly upheld the warden's decision.  (*Ibid.*)

On an unspecified date, the plaintiff filed a final administrative appeal to the BOP's general counsel in Washington, D.C.  (Defendants' Exhibit 6.)  On September 8, 2008, the National Inmate Appeals Administrator denied the plaintiff's appeal.  (*Ibid.*)  It was again explained to the plaintiff that because the funds came from an unauthorized source, the money would not be available to him until he was released from prison.  (*Ibid.*)  The Administrator noted that the plaintiff nevertheless had access to any funds above and beyond the amount of the $75.00 encumbrance.  (*Ibid.*)

On December 9, 2008, the plaintiff filed a *Bivens* action against various MCC employees. (Document no. 1, Complaint.)  On July 31, 2009, the plaintiff submitted an amended complaint adding an FTCA claim against the United States.  (Document #39, Amended Complaint.)  In a letter dated July 29, 2010, the plaintiff was notified of the final decision on his federal tort claim and was advised of his right to bring suit in federal court.  (Plaintiff's Motion for Leave to File Second Amended Complaint, document no. 84, at p. 1.)

ANALYSIS

Certain claims must be dismissed for failure to exhaust administrative remedies prior to filing suit; with regard to any remaining claims, there is no genuine dispute as to any material

fact, and the defendants have established that they are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants violated the plaintiff's constitutional rights.

This entire dispute essentially boils down to the plaintiff's dissatisfaction with a warden's discretionary decision to place an encumbrance on a $75.00 deposit correctional officials viewed as suspect. There is an ancient maxim, *de minimis non curat lex*, "the law cares not for trifles." *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 WL 265177, *4 (N.D. Ill. Feb. 25, 2002) (Kocoras, J.). The plaintiff's attempts to bring this minor concern within the purview of *Bivens* and the FTCA by asserting multiple constitutional violations are to no avail.

I.    Federal Tort Claim Against the United States

The plaintiff may not pursue a tort claim against the United States because he failed to completely exhaust administrative remedies under the FTCA prior to initiating suit. "An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing...." 28 U.S.C. § 2675(a); *see also Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997) ("No one may file suit under the Federal Tort Claims Act without first making an administrative claim"). A plaintiff's failure to exhaust administrative remedies in an FTCA case divests a court of jurisdiction over the action. *McNeil v. United States*, 508 U.S. 106, 111-13 (1993); *Murrey v. United States*, 73 F.3d 1448, 1451 (7th Cir. 1996). The FTCA requires claimants to present their tort claims to the appropriate federal agency before filing suit. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003), *citing* 28 U.S.C. § 2675(a).

An inmate seeking to bring a claim under the FTCA may start the process by mailing the appropriate administrative claim form, available at all BOP institutions, to the regional office in the region where the claim occurred. 28 C.F.R. § 543.31(b)-(c). Once the inmate has appropriately filed his claim, he receives an acknowledgment letter and a claim number. 28 C.F.R. § 543.32(a). The claim will then be investigated and reviewed by the Regional Counsel or his or her designee. 28 C.F.R. § 543.32(c)-(d). If the claim is denied by the Regional Counsel, the inmate may seek reconsideration. 28 C.F.R. § 543.32(g). If dissatisfied with the final agency action (or if he receives no response within six months), the inmate may then file suit in federal court. *Id.*

The parties dispute whether, before filing this lawsuit, the plaintiff presented a Standard Form 95 or other written notification of the incident, "accompanied by a claim for money damages in a sum certain." *See* 28 C.F.R. § 14.2(a); *see also Sanders v. United States*, No. 08 C 1660, 2008 WL 4696145, *2 (N.D. Ill. Oct. 21, 2008) (Kennelly, J.). A claim is "deemed to have been presented when a Federal agency receives [it] from a claimant." *Palay*, 349 F.3d at 425 (*quoting* 28 C.F.R. § 14.2(a)). But the court need not resolve that contested issue. Regardless of whether the plaintiff initiated the administrative process either before commencing suit or before preparing his amended complaint, he did not complete the administrative review process until well after the summary judgment motions were fully briefed.

The plaintiff was required to "fully exhaust his administrative remedies **before** filing [a] lawsuit [under the FTCA]." *Boyer v. Farlin*, No. 04 C 1042, 2006 WL 3590174, *4 (C.D. Ill. Dec. 8, 2006) (Baker J.) (emphasis in original) (collecting cases). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."

*McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that dismissal of an FTCA claim was warranted even where the plaintiff had submitted a claim to the agency prior to filing suit and received notice of rejection of his claim before any substantial progress had taken place in the litigation).

In his motion for leave to amend, the plaintiff states that he "received certified notification of final decision of federal tort claim dated July 29, 2010, and notification that he may file suit in U.S. District Court...."  (Plaintiff's Motion for Leave to File Second Amended Complaint, document no. 84, at p. 1.)  Because the plaintiff filed his FTCA claim almost a year before he received a final agency decision, the claim must be dismissed.  The plaintiff's proposed amendment would therefore be futile.  *Contrast Antonelli v. Sherrow*, No. 02 C 8714, 2005 WL 2338813, *9 (N.D. Ill. Sep. 21, 2005 (Nordberg, J.) (plaintiff allowed to proceed with FTCA claim where he exhausted the administrative process prior to filing his amended complaint); *see also Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (plaintiff permitted to drop properly exhausted FTCA claim and substitute properly exhausted 1983 claims).  The court has no power to review the plaintiff's prematurely filed FTCA claim.

For the above-stated reasons, the plaintiff's FTCA claim against the United States is dismissed pursuant to 28 U.S.C. § 2675(a) for failure to exhaust administrative tort remedies prior to initiating suit.

The plaintiff would be well advised to perform some basic legal research before deciding whether to refile his Federal Tort Claim action and incurring another filing fee.  The plaintiff's attention is specifically directed to the discretionary function exception to FTCA liability.  *See* 28 U.S.C. § 2680(a); *Berkovitz v. United States*, 486 U.S. 531, 535 (1988).  The warden's

decision to freeze a suspicious $75.00 deposit on the plaintiff's inmate account strikes the court as precisely the type of action involving "an element of judgment or choice" that is shielded against suits for damages. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Rothrock v. United States*, 62 F.3d 196, 198 (7th Cir. 1995). The defendants have set forth several policy reasons for mistrusting deposits from one inmate's family into the prison trust fund account of an unrelated fellow prisoner. Extortion, protection money, and illegal bartering are certainly all legitimate penological concerns.

II.    The Plaintiff's Bivens Claims

The plaintiff similarly failed to exhaust grievance procedures with respect to certain constitutional claims; regardless, the plaintiff's *Bivens* claims cannot survive summary judgment.

A. The Plaintiff's Fifth Amendment (Due Process) Claim

1.    No Protected Interest in Access to Spending Funds

The plaintiff had no constitutionally protected interest in spending his money at the prison commissary. It is undisputed that inmates have a property interest in their personal funds on deposit in their prison accounts. *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986). However, defendant Wilson has not taken the plaintiff's money. Instead, the warden has only placed an encumbrance on the questionable $75.00 until the plaintiff is released from prison.

The plaintiff was not constitutionally entitled to a hearing or any other due process before his funds were frozen. BOP program statement 4500.05 § 8.9 (*see* Defendants' Exhibit 8) provides:

> It is recognized that encumbrance of inmate's (sic) funds for various reasons is essential. Careful consideration shall be given prior to any action and any

> encumbrances shall not be made indiscriminately. Encumbrance of funds may be
> made for various reasons.... All encumbrances are at the Warden's discretion or
> the result of a disciplinary hearing sanction.... Funds the Warden encumbers may
> only be released upon his/her approval or upon inmate release.

The rule authorizing the warden to place a hold on inmate funds requires no due process. The plaintiff is splitting hairs in pointing out that the deposit in question came from a fellow inmate's common law wife rather than directly from the other inmate himself.

A regulation allowing prison officials discretion to act for any reason except discipline does not establish a liberty or property interest for purposes of the due process clause. "We conclude that a rule giving prison officials discretion to act for any reason, but placing restraints on their options if their motive is disciplinary, creates neither a liberty nor a property interest." *Wallace v. Robinson*, 940 F.2d 243, 244 (7th Cir. 1991) (upholding a challenge to a change in a prisoner's job assignment). "Liberty and property interests depend on substantive rules governing entitlements; rules addressed to motive that do not require particular action to follow particular facts lack the sort of substantive constraints necessary to create liberty or property interests." *Ibid.* "[T]o require correctional officials to seek a criminal restitution order or a civil tort judgment before freezing an inmate's trust fund account would only 'delay implementation of, and hence, impair the efficacy of prison disciplinary measures.'" *Isby v. Wright*, 1994 WL 176224, *1 (unpublished, 7th Cir. May 9, 1994), *quoting Campbell*, 787 F.2d at 224. The BOP was not required to provide any due process before placing a discretionary, nondisciplinary freeze on the $75.00.

      2.     The Administrative Processes Afforded the Plaintiff Due Process

Even assuming (without finding) that the plaintiff was entitled to some form of procedural due process, the administrative grievance and tort procedures satisfied any such right.

The core of due process is the right to notice and a meaningful opportunity to be heard. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *see also United States v. All Assets and Equipment of West Side Bldg. Corp.*, 58 F.3d 1181, 1192 (7th Cir. 1995) (ruling that unless exigent circumstances exist, the government must afford due process before seizing real property subject to civil forfeiture). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

In deciding what process is due, courts consider three factors: (1) the private interest at stake; (2) the risk of mistaken deprivation and value of additional or different procedures; and (3) the government's interest in the function involved and the potential burden of other procedures. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). The limited deprivation of the use of the plaintiff's commissary funds must be "evaluate[d] ... within the context of the prison system and its attendant curtailment of liberties." *Wilkinson*, 545 U.S. at 225 (holding that a state's informal, nonadversarial procedures for placement of inmates in a "supermax" prison were adequate to safeguard inmates' liberty).

Here, all three factors weigh against the plaintiff. The Court of Appeals for this circuit has suggested, in dicta, that a property interest may be implicated in the *use* of funds in a prison account. *Kimberlin v. United States Dep't of Justice*, 788 F.2d 434, 438 (7th Cir. 1986). However, as evident by regulations like BOP program statement 2000.02, inmates do not enjoy complete control over funds held in prison accounts. Further, the encumbrance of funds here

ends upon release, so it is not an absolute deprivation of the property.  Accordingly, the private interest at stake in this lawsuit is of a limited nature.

Next, the court considers the procedural protections actually provided to the plaintiff and the value of requiring additional procedures in order to minimize the risk of mistaken deprivation.  In the instant case, the plaintiff does not contest that he had notice of the encumbrance and the reasons for it, or that he had an opportunity to appeal the encumbrance; instead, he asserts that a hearing was required.  The relevant question is therefore whether a hearing, as opposed to the process the plaintiff received, would lessen the risk of erroneous deprivation.  *Wilkinson*, 545 U.S. at 225.  The court finds no such additional value to holding a hearing in this case.

The plaintiff was able to file an administrative grievance regarding the encumbrance, and to pursue multiple appeals in connection with that grievance; he also availed himself of administrative tort remedies.  Although the plaintiff argues that the program statement was incorrectly applied, he has never disputed that he received the $75.00 from the common law wife of another inmate [and for that matter, he has never explained for the record why another inmate's wife was sending him money].  Because the underlying facts are uncontested, the value of a hearing as opposed to the administrative review process is negligible.  The court finds no authority for the proposition that the plaintiff enjoyed the same due process safeguards for a freeze on a deposit that would be required before a disciplinary sanction was imposed.

Third, the government's interest in preventing transfers of funds between inmates is compelling.  The interest in prison order and discipline is the dominant consideration in cases such as this one.  *See, e.g; Wilkinson* 545 U.S. at 227 ("[p]rison security ... provides the

backdrop of the State's interest").  In short, the BOP's reasons for flagging unauthorized money transfers between inmates are significant, the post-deprivation remedies afforded the plaintiff were adequate, and the private interest affected was minimal.  The plaintiff's due process claim fails as a matter of law.

###   3.   Failure to Exhaust the Retaliation/Coercion Claim

The court cannot entertain the plaintiff's claim that defendant Johnson sought and maintained the encumbrance on the plaintiff's trust account in order to coerce him to provide information about contraband.  In none of the plaintiff's requests for an administrative remedy did he make any mention whatsoever of Johnson allegedly using the encumbrance as leverage against him.

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement.  Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2001).  "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim [in federal court]."  *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).[1]

---

[1]There are separate and distinct administrative exhaustion processes for claims under the FTCA and constitutional claims concerning the conditions of an inmate's confinement.  Fulfillment of the Federal Tort Claims Act's administrative exhaustion requirement does not satisfy the PLRA's exhaustion requirement.  *See, e.g., Gaughan v. U.S. Bureau of Prisons*, No. 02 C 0740, 2003 WL 1626674, at *2 (N.D. Ill. Mar. 25, 2003) (Andersen, J.).  Conversely, exhaustion of prison administrative remedies through the inmate grievance process would not satisfy FTCA exhaustion requirements.  *Watts v. U.S.,* 2002 WL 31427395, at *1 (C.A. D.C. Oct. 30, 2002).

The main purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *see also Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). As a general rule, an inmate need not state "facts, legal theories, or demand relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650; *Riccardo*, 375 F.3d at 524.

The court recognizes that in this circuit, a defendant in a civil suit need not necessarily first be named in an inmate's prison grievance. *Strong*, 297 F.3d at 649. However, in the case at bar, the plaintiff's myriad grievances and appeals not only failed to identify Johnson as a wrongdoer, but also never reported to any authority that an improper motive was behind the $75.00 encumbrance; he only claimed throughout the process that he needed access to the money. The plaintiff cannot pursue this new theory of recovery in federal court having never given the prison the opportunity to investigate and correct the situation. The plaintiff's grievance was insufficient to alert prison officials to the "nature of the wrong." *Strong*, 297 F.3d at 650. Nothing in the record supports an inference that defendant Wilson, the only person with authority to approve the encumbrance, was aware that defendant Johnson had purportedly solicited the encumbrance in order to exert pressure on the plaintiff.

4.    Qualified Immunity

Even if defendant Wilson did violate the plaintiff's constitutional rights by improperly freezing the $75.00 deposit without affording him due process, the defendant is entitled to qualified immunity.  The doctrine of qualified immunity is "designed to protect state and federal officials from civil liability for conduct that was within the scope of their duties or conduct that did not violate clearly established law."  *Nevada v. Hicks*, 533 U.S. 353, 400 (2001).  When a state or federal official asserts qualified immunity, he claims that his actions were reasonable in light of clearly established law.  *Id., citing Anderson v. Creighton*, 483 U.S. 635 (1987). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  *Wilson v. Layne*, 526 U.S. 603, 609 (1999), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights.  *McAllister v. Price*, — F.3d —, 2010 WL 3169326, *3 (7th Cir. Aug. 12, 2010).  The court then determines whether those rights were clearly established at the time the alleged violation occurred.  *Ibid.*  Only if the rights were clearly established may the official be liable for monetary damages.  *Id.*, 2010 WL 3169326, at *7; *see also Richardson v. McKnight*, 521 U.S. 399, 403 (1997).

Here, the plaintiff had no clearly established right to due process before an encumbrance was placed on his inmate trust account.  For a right to be "clearly established," the "contours of

the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004); *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *McAllister*, 2010 WL 3169326, *7, *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The warden, who was acting pursuant to a regulation that has not been found to have been unconstitutional, could not have known on the basis of existing law that his actions were impermissible. Ergo, he is entitled to qualified immunity.

B.  The Plaintiff's First Amendment Religious Exercise Claim

    1.    Failure to Exhaust the Freedom of Religion Claim

The plaintiff's First Amendment claim is likewise non-actionable. Although the plaintiff now contends that the $75.00 encumbrance prevented him from purchasing certain religious items, he never raised any such free exercise concerns in his administrative complaints or requests. The plaintiff claimed only that he needed to purchase medication and to call his family. Because the plaintiff failed to exhaust administrative remedies with respect to his First Amendment religion claim, the claim must be dismissed pursuant to 28 U.S.C. § 1997e(a).

    2.    No Triable Religious Freedom Claim

Regardless, the BOP regulation prohibiting transfers of funds between inmates is a neutral policy that is wholly unrelated to religious practice. It is well-settled that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of*

*the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (finding that city ordinances dealing with the ritual slaughter of animals were not neutral).  A law is not neutral if "the object of the law is to infringe upon or restrict practices because of their religious motivation."  *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007), *quoting Lukumi*, 508 U.S. at 533.  The related principle of "general applicability" forbids the government from imposing burdens on "conduct motivated by religious belief" in a "selective manner."  *Lukumi*, 508 U.S. at 543.  "Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied."  *Id.* at 531.

The plaintiff is over-reaching in claiming a violation of his religious rights.  As discussed in preceding paragraphs, the stated [and obvious] purpose of the regulation in question is to inhibit illegal activity among inmates and enhance institutional safety and security.  Any collateral effect of limiting the plaintiff's ability to purchase religious items would be wholly unintentional and unforeseeable.  Just as prisons are not required to furnish indigent inmates with Bibles, Qurans, or other religious materials at state expense, *see, e.g., Cruz v. Beto*, 405 U.S. 312, 323 (1972) (Burger, J., concurring); *Frank v. Terrell*, 858 F.2d 1090, 1091 (5th Cir. 1988), the court discerns no basis for ruling that an otherwise neutral and permissible encumbrance must be relaxed simply because the inmate asserts a religious reason for demanding access to his money.

Even neutral regulations having a direct impact on religious items have been upheld in this circuit.  In *Borzych v. Frank*, 439 F.3d 388 (7th Cir. 2006), for example, the U.S. Court of Appeals for the Seventh Circuit affirmed summary judgment in favor of prison officials who had

banned certain "religious" books the plaintiff deemed necessary for the practice of his Odinist religion but that were believed by the Wisconsin Department of Corrections to promote white-supremacist violence. The court ruled: "Neither statute [referring to the Religious Land Use and Institutionalized Persons Act and the Religious Freedom Restoration Act] requires (or permits) courts to nullify whole regulations just because they have a potential for improper application to a particular faith or belief." *Borzych* at 391. The regulation at issue in the case at bar has a far more tangential impact than the regulation challenged in *Borzych*. The court will defer to the judgment of prison officials that transfers among inmates are incompatible with institutional safety and security.

C. The Plaintiff's First Amendment Freedom of Association Claim

The defendants are also immune from suit notwithstanding the neutral policy's effect on the plaintiff's ability to contact his family. Certainly, prisoners retain their First Amendment right to correspond and communicate with their loved ones. *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000), *citing Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989). But in the case at bar, the defendants did not affirmatively restrict the plaintiff's associational rights. Rather, the $75.00 encumbrance on the plaintiff's trust account placed him in the same position as indigent inmates. It is most unfortunate that the plaintiff's family could not or would not accept collect telephone calls. But the defendants are not liable under the First Amendment for this indirect consequence of the encumbrance.

D. The Plaintiff's Eighth Amendment Medical Claim

Finally, there is insufficient evidence of deliberate indifference to a serious medical need for the matter to go to a jury.

1.    FTCA Only Remedy Against Officers of the U.S. Public Health Service

The plaintiff cannot sue defendant Harvey or Lamping under *Bivens* because they are commissioned officers of the U.S. Public Health Service.  Under 42 U.S.C. § 233(a), suits for personal injury regarding medical care by a commissioned officer must be brought under the FTCA.  Suit under the FTCA "shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee ... whose act or omission gave rise to the claim."  28 U.S.C. § 233(a).  "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."  *Hui v. Castaneda*, —U.S. —, 130 S. Ct. 1845, 1851 (2010).  Section 233(a) "plainly precludes a *Bivens* action" against Public Health Services officers.  *Id.*, 130 S. Ct. at 1855.

2.    No Serious Medical Need

Insofar as the plaintiff might be able to bring a *Bivens* action against the remaining defendants for denial of medical necessities, the court finds that he has no viable claim. Although a somewhat closer call than the plaintiff's other claims, the court finds that the plaintiff did not have a serious medical need for Zantac and that, in any event, the defendants did not act with deliberate indifference.

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee.  *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).  Deliberate indifference in the medical context has both an objective and a subjective element:  the inmate must have an objectively serious medical condition, and the correctional official or health care provider must be subjectively

aware of and consciously disregard the medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The Constitution is violated only if prison officials are inattentive to an objectively "serious" medical needs (or signs of a serious medical need). *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 WL 2983966, *11 (N.D. Ill. Dec. 23, 2004) (Gottschall, J.). Under the Seventh Circuit's standard,

> [a] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.... [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *see also Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

The court finds as a matter of law that the plaintiff's acid reflux did not rise to the level of a serious medical need for purposes of Eighth Amendment analysis. *See, e.g., Montes v. Ponce Municipality*, 79 Fed. Appx. 448, 451 (1st Cir. 2003) (a condition warranting only over-the-counter[2] pain killers was not "serious"); *Green v. Senkowski*, 100 Fed. Appx 45, 46-47 (2d Cir. 2004) (finding that the plaintiff had not established that he suffered from a serious medical condition where he received only mild, over-the-counter pain medication for his sporadic complaints of wrist pain and was never diagnosed with a chronic or severe wrist condition); *Guarneri v. Hazzard*, 2010 WL 1064330, *15 (N.D. N.Y. Mar. 22, 2010) (back pain

---

[2]Zantac is available both over-the-counter and, in stronger doses, by prescription. *See Physicians' Desk Reference*, 5th ed. (2005).

prompting requests for "simple Ibuprofen and similar over-the-counter medications" did not amount to serious medical need); *Washington v. Yvette*, 2010 WL 1418590, *4 (W.D. La. Mar. 17, 2010) (neck and back complaints that a free person would treat with over-the-counter, at-home remedies, as opposed to emergency or specialized medical care, did not rise to the level of a "serious medical need", but rather were "in the realm of a *de minimis* injury, and as such ha[d] no constitutional significance"); *Allen v. Johnson*, 2009 WL 102541 (W.D. N.C. Jan. 13, 2009) (inmate's alleged heartburn, gas and headache did not rise to the level of a serious medical need; at most, jail employees' failure to provide over-the-counter medicine resulted either from a lack of communication between employees and inmate regarding treatment, or mere negligence in diagnosis or treatment, which was insufficient to state a constitutional claim).  Apart from the plaintiff's say-so, there is simply no evidence that his acid reflux was a matter of the gravity contemplated by *Estelle* and its progeny.

Moreover, the record does not support an inference that the defendants acted with deliberate indifference.  The documents in the record show that the plaintiff's treating physicians examined him and determined that his acid reflux was a relatively minor, symptomatic ailment. Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment.  *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010), *citing Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).  Furthermore, a failure "to dispense bromides for the sniffles or minor aches and pain or a tiny scratch or a mild headache–the sorts of ailments for which many people who are not in prison do not seek medical attention--does not by its refusal violate the Constitution."  *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

Regrettably, the encumbrance seems to have placed the plaintiff in an unenviable position: for at least part of his stay at MCC, he evidently did not qualify for indigent status because he had money on the books, but he could not buy Zantac because the $75.00 was frozen. However, the plaintiff conceded in his own statement of facts that he went without medication only from March 31, 2008, through June 12, 2008; at all other times, MCC apparently furnished him with Zantac or other antacid medications.

Neither party has provided a copy of the plaintiff's trust account statement spanning the entire time he spent at MCC. The record therefore does not reflect whether the plaintiff was receiving money while confined at MCC and spending it on other purchases, as suggested by defendant Lamping in her April 1, 2008, memo to the plaintiff ("You have been making regular withdrawals from your account since July 2007. Please purchase your Zantac from the commissary per policy. Not indigent." (Plaintiff's Exhibit B to His Local Rule 56.1 Statement). *See also* Plaintiff's Exhibit G, Memo to Plaintiff from Defendant Harvey: "Don't spend all of your money on other things only to have no money to buy this medication from commissary"). *See Keller v. Faecher*, 44 Fed. Appx. 828, 831 (9th Cir. 2002) (no liability where prison physician was unaware that the inmate lacked sufficient funds to purchase over-the-counter medication).

The record does not present a triable issue regarding deliberate indifference to a serious medical need. "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594-595 (7th Cir. 2007), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). An inmate claiming a

denial of medical care "must place verifying medical evidence in the record to establish the detrimental effect" of a failure to treat. *Williams v. Jackson*, No. 01 C 1520, 2002 WL 598516, *4 (N.D. Ill. Apr. 18, 2002) (Andersen, J.), *citing Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995). The plaintiff in this case has not met his burden of production.

## CONCLUSION

For the foregoing reasons, the court finds that there is no triable dispute as to any outcome-dispositive fact, and concludes that the defendants are entitled to judgment as a matter of law on the plaintiff's remaining claims (to the extent that the plaintiff has exhausted administrative remedies as to any given claim). Accordingly, the defendants' motion for summary judgment is granted.

If the plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment [#65] is denied, and his motion for leave to file a second amended complaint [#84] is denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment [#56] is granted. The plaintiff's FTCA claim is dismissed pursuant to 28 U.S.C. § 2675(a) for failure to exhaust administrative tort remedies prior to bringing suit. The plaintiff's retaliation/coercion claim, as well as his religious exercise claim, are dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust grievance procedures prior to filing suit or, in the alternative, summary judgment is granted in favor of the defendants on those claims. The clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56 on all remaining claims. The case is terminated.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 15, 2010